## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STAR SPA SERVICES, INC.,** | : | **No. 3:07cv302** |
| **STAR SPA INC., and** | : | |
| **STARK SPENCER REAL ESTATE** | : | **(Judge Munley)** |
| **PARTNERSHIP,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT G. TURANO INSURANCE** | : | |
| **AGENCY, INC,** | : | |
| **ROBERT G. TURANO,** | : | |
| **SHERRI ROBBINS,** | : | |
| **NATIONWIDE MUTUAL FIRE** | : | |
| **INSURANCE CO.,** | : | |
| **NATIONWIDE FLOOD INSURANCE** | : | |
| **PROGRAM,** | : | |
| **NATIONWIDE PROPERTY &** | : | |
| **CASUALTY CO., and** | : | |
| **NATIONWIDE MUTUAL INSURANCE** | : | |
| **CO.,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

_____Before the court is defendants' motion for summary judgment.  (Doc. 23).

Having been fully briefed, the matter is ripe for disposition.

**Background**

This case concerns the duties of insurers related to flood coverage.   On or

about June 23, 2006, a flood occurred at a property on 1250 Roosevelt Highway, Rt.

6, in Waymart Pennsylvania.  (Defendants' Statement of Undisputed Facts (Doc. 24)

(hereinafter "Defendants' Statement) at ¶ 5).  Plaintiff Star Spa Services ("Star Spa") is a former tenant of Plaintiff Stark Spencer Real Estate Partnership ("Stark Spencer") at this address.  (Id. at ¶ 3).  Both companies are Pennsylvania corporations.  (Id. at ¶¶ 1-2).   On that date, Stark Spencer maintained a standard flood insurance policy on that property in question through Defendant Nationwide Mutual Flood Insurance Company ("Nationwide").  (Id. at ¶ 6).  Star Spa did not have flood insurance coverage for its property, which was stored in the structure owned by Stark Spencer.  (Id. at ¶ 7).

Defendants contend that Star Spa never made a request for flood insurance coverage from them. (Id. at ¶ 8).  No flood insurance policy was ever issued to Star Spa.  (Id. at ¶ 9).  When informed by the bank that plaintiff required flood insurance coverage for its renovated building, the plaintiff understood that this type of insurance coverage was separate from other insurance on the property.  (Id. at ¶ 10).  Defendant Turano Insurance Agency ("Turano") and its representatives never informed Star Spa that it was covered for its contents under a flood insurance policy. (Id. at ¶ 11).  Turano also never informed Star Spa that it enjoyed flood insurance coverage under Stark Spencer's flood insurance policy.  (Id. at ¶ 12).  The property damaged in the flood on June 23, 2006 belonged to Star Spa.  (Id. at ¶ 13).  The property where the flooding took place is located in a flood zone rated "AE."  (Id. at ¶ 14).  Substantial improvement and construction occurred at that property after September 30, 1987.  (Id. at ¶ 15).

2

On January 24, 2007, plaintiffs filed a complaint in the Court of Common Pleas of Wayne County, Pennsylvania. The complaint consists of four counts.  Count I alleges that the Nationwide Insurance Defendants improperly denied coverage for plaintiffs' losses from the flood.  Plaintiffs allege that Nationwide's improper refusal to provide coverage under the policy resulted in "direct and consequential damages" that included "additional damage to personal property and profits, substantial financial hardship and inconvenience with loss of rents and/or rental income."  (Id. at ¶ 11).  Count II alleges that all defendants negligently misrepresented to the plaintiffs that they would obtain flood contents coverage for Star Spa. (Id. at ¶¶ 13-16).  Count III contends that defendants were careless and negligent in failing to provide insurance for the property's contents and failing to notify plaintiffs about the limits of the insurance.  (Id. at ¶¶ 18-19).  Count IV alleges that the Turano Defendants, in failing to provide plaintiffs with contents coverage, engaged in unfair and deceptive acts or practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. § 201.2(4).

On February 16, 2007, defendants filed a notice of removal with this court (Doc. 1).  On February 22, 2007, the defendants filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 3).  Both parties then filed briefs.  The court issued a decision denying in part and granting in part the motion to dismiss on September 25, 2007.  The parties then engaged in discovery.  At the close of discovery, the defendants filed the instant motion for summary judgment,

3

bringing the case to its present posture.

**Jurisdiction**

Because this case arises from a dispute over flood insurance claims under the National Flood Insurance Program, this court has jurisdiction pursuant to 42 U.S.C. § 4072.  The court has supplemental jurisdiction over the plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

The case is before the court on the defendants' motion for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

4

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986).

**Discussion**

Defendants move for summary judgment on several grounds. The court will address each in turn.

### A. Pre-Emption of Plaintiffs' Extra-Contractual Claims

The defendants argue that all of plaintiffs' extra-contractual and tort claims, contained in Counts II-IV of the complaint, are preempted and/or barred as a matter of law. The only allegation of damages in the complaint, defendants contend, are contained in Count I. In that Count, plaintiffs contend that they suffered loss solely because of defendants' failure to make payment under the policy. All of the state-law claims are therefore "preempted" as a matter of law. Moreover, defendants

5

insist that the National Flood Insurance Act preempts any claims for misrepresentations about coverage brought pursuant to Pennsylvania law.

"Congress created the [National Flood Insurance] Program to provide standardized insurance coverage for flood damage at or below actuarial rates." C.E.R. 1988, Inc. v. Aetna Cas. and Sur. Co., 386 F.3d 263, 266 (3d Cir. 2004). Under this program, "Congress authorized [the] F[ederal] E[mergency] M[anagement] A[gency] to 'prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance." Id. at 267. Congress allows private insurance companies to write flood-insurance policies, but those companies "must strictly enforce the provisions set out by FEMA and may vary the terms of a Policy only with the express written consent of the Federal Insurance Administrator." Id. Policies written under the Act are called Standard Flood Insurance Policies." (SFIPs). Neill v. State Farm Fire and Cas. Co., 159 F. Supp. 2d 770, 772 (E.D. Pa. 2000).

The Act "provides subject matter jurisdiction for an insured's suits against a[n] [insurer] arising out of a disputed flood insurance claim." Van Holt v. Liberty Mut. Fire. Ins. Co., 163 F.3d 161, 166 (3d Cir. 1998). Because of the federal government's interest in uniform national policies and standards in relation to flood insurance, "federal courts are the appropriate and exclusive arbiters of Policy-related disputes." C.E.R. 1988, Inc., 386 F.3d at 267. These courts must apply federal, not

state, law to interpreting policies issued under the Act.  Id.  Moreover, a plaintiff may

not plead a state-law tort claim to avoid federal law in interpreting such insurance

contracts, since "a claim may sound in tort but nonetheless be one in contract."  Id.

at 268.  Courts have therefore found that "federal common and statutory law

specifically preempt state principles of contract law for purposes of the

interpretations of policies issued pursuant to the N[ational F[lood] I[nsurance] A[ct]."

Messa v. Omaha Property & Cas. Ins. Co., 122 F.Supp. 2d 513, 520 (D.N.J. 2000);

see also, Padalino v. Standard Fire Ins. Co., No. 08cv1553, 2008 WL 4630585 at * 3

(E.D. Pa. Oct. 15, 2008) (finding that "NFIA [preempts] state law claims that are

based on the handling and adjustment of a claim made under an insured's SFIP

because the 'application of state law would impede Congress's objectives' in

reducing 'fiscal pressure on federal flood relief efforts.'") (quoting C.E.R. 1988, 386

F.3d at 270).

    Accordingly, if the court were to find that plaintiffs' tort claims were merely an

attempt to use state law to interpret a contract issued pursuant to the NFIA, the court

would find those tort claims preempted.  The tort claims in question here, however,

are not designed to determine whether the defendants properly interpreted the

policy.  Instead, they are aimed at the negotiations the parties undertook when they

procured the coverage.  Indeed, Plaintiff Star Spa acknowledges that the company

did not purchase any flood insurance coverage before the incident in question.

Courts in various jurisdictions have concluded that federal preemption does not

apply to the procurement of flood insurance policies under the Act.  See, e.g.,

Spence v. Omaha Indem. Ins. Co., 996 F.2d 793, 796 (5th Cir. 1993) (finding that

"tort actions based on misrepresentations concerning the SFIP, as opposed to

contract claims under the SFIP itself" are not preempted under the Act); Reeder v.

Nationwide Mut. Fire Ins. Co., 419 F. Supp. 2d 750, 759 (D. Md. 2006) (finding that

"state law tort claims arising out of alleged misrepresentations made during the

procurement of an SFIP are not preempted in the flood insurance context"); Padlino,

2008 WL 4630585 at *4 (finding that "state law claims against W[rite]Y[our]O[wn]

companies in the context of SFIP procurement should not interfere with Congress's

objective of providing affordable flood insurance to the public.").

      Here, the complaint is not about the interpretation of a flood insurance policy,

but the procurement of one.  The denial of coverage for Star Spa came not because

the claim did not qualify under the policy, but because there was no policy under

which plaintiffs could make a claim.  In that case, the reasons for preempting state

law–to give effect to the supremacy of federal law enshrined in the Constitution and

allow the efficient operation of a federally designed nationwide regulatory

scheme–are not applicable.  No flood control policy was in place here, and there

thus exists no reason to use federal law to interpret the policy.  See, e.g., Padlino,

2008 WL 4630585 at * 6 (holding that "Without a SFIP, the NFIP does not apply and

the NFIA cannot extend to the relationship between the insurance company and their

insureds.").  If plaintiffs did not actually have a flood insurance policy, defendants

should not be able to use rules applied to those who took out such a policy to short-circuit the plaintiffs' claims.  Accordingly, the court will not grant summary judgment on these grounds.  The court will, however, consider defendants' motion in relation to the claims themselves.

### B.  Negligence Claims Against Turano Agency

#### i.  Duty

Defendants contend that plaintiffs' negligence claims against Defendant Turano Agency must fail because that defendant neither had a duty to provide flood insurance nor a duty imposed by law to secure such coverage for plaintiffs. Evidence indicates that plaintiffs were aware that Turano would not provide such coverage, and thus the defendant had no duty to do so.  Those facts establish that Plaintiff Stark Spencer suffered no loss and Plaintiff Star Spa had no expectation that it would receive coverage.  Further, defendants argue that Turano met its legal duty to explain the coverage available and the consequences of not accepting that coverage.

Donna M. Spencer, President of Plaintiffs Star Spa and Stark Spencer testified at her deposition about the process of insuring the property on Roosevelt Road.  She first contacted Defendant Turano Insurance Agency in September or October of 2002.  (Deposition of Donna M. Spencer, Exh. J to Plaintiffs' brief in opposition to defendants' motion for summary judgment (Doc. 28-3) (hereinafter "Spencer Dep.") at 32).  The business had expanded and planned to move to a new

9

location, and Spencer sought an insurance agency based closer to that business.

(Id.).  Her husband, the other principal in the business, knew the head of the agency,

and Spencer asked for a quoted rate.  (Id. at 33).  She sought coverage for all of the

business, except for vehicles, which were covered by State Farm.  (Id.).  Spencer

sought coverage for her businesses' operations.  (Id. at 33-34).  She knew that her

businesses needed coverage for "fire and flood and liability," but "relied on" the

Defendant Agency to provide her with "adequate coverage."  (Id. at 34).  She had

never before purchased flood insurance.  (Id.).  The companies' new property,

however, was located on a flood plain, and the bank that made the mortgage for that

property had informed Spencer that she needed flood insurance.  (Id.).  In her

testimony, Spencer insisted that she never told anyone at the Agency that she

wanted only the "bare minimum" flood insurance.  (Id. at 34-35).

    Eventually, Defendant Turano wrote the plaintiffs' insurance policies.  (Id. at

35).  Spencer testified that in September or October of 2002 she requested

"[b]uilding and contents coverage" for both Star Spa and Stark Spencer.  (Id. at 39).

She called up a Turano representative and told her that she wanted "building

coverage for Stark Spencer and contents for Star Spa."  (Id.).  Spencer testified that

she also requested flood insurance from the Defendant Agency.  (Id. at 39-40).  She

did not make that request in writing, however. (Id. at 40-41).  Instead, she made a

verbal request for the coverage, as "[t]hat's the way we always did business with

them."  (Id. at 41).  Stark Spencer procured a flood insurance policy through

10

Defendant Turano in 2002.  (Id. at 44).  Star Spa sought flood insurance coverage

for the contents of the building the companies shared, but "were told they couldn't

get it."  (Id. at 45).   When the companies renewed their policies in 2003, Spencer

again requested flood insurance for Star Spa to cover the building's contents.  (Id. at

47).  The companies were expanding the building and wanted to ensure coverage.

(Id.).  Again, however, the Defendant Agency informed Spencer that flood insurance

coverage was not available for the building's contents.  (Id.).  Spencer requested

such coverage for contents once more in the spring of 2004.  (Id. at 48).  Defendant

again informed here that such coverage was not available.  (Id.).

        In August or September 2004, however, Spencer again requested a flood

policy for Star Spa.  (Id. at 49).  The new building had been constructed, and Star

Spa had moved a great many items to the store.  (Id.).  Spencer claimed that the

items were not stored in a basement, and that Star Spa should thus be eligible for

coverage.  (Id.).  Concluding that the area where the goods were stored was a

basement, Defendant informed Star Spa that it could not obtain flood insurance for

the goods.  (Id. at 50).  According to Spencer, Defendant Turano then suggested

that she obtain "a blanket protector," which she took to mean would "cover contents

under any circumstances."  (Id.).  The company never gave her specific information

on that type of policy, but Spencer purchased a blanket protector nonetheless.  (Id.).

Spencer believed that such a policy would cover the contends "if a flood should

occur."  (Id. at 51).  Spencer insisted that no one explained to her that the blanket

11

protection she bought would not cover the contents in the case of a flood.  (Id. at 52).

Indeed, she contended that Turano Agency representatives had implied that the

blanket coverage would protect the contents against flood.  (Id. at 53).  She had

sought such coverage, been told that the flood-insurance policy could not cover

contents and then the defendant had suggested she buy a blanket protector.  (Id. at

54).  Stark Spencer purchased the blanket protector policy to be effective from

September 11, 2004 until September 11, 2005.  (Id. at 55-56).

    In April 2005, Stark Spencer increased the flood coverage on the building from

$45,000 to $160,000.  (Id. at 59).  The company increased coverage because

improvements to the building had been completed and the insurance was changed

to reflect the value of those improvements.  (Id.).  When Spencer sought the

insurance, she knew that the coverage was for the building and not its contents.

(Id.).  The Turano Agency had repeatedly informed her that flood insurance

coverage was not available to Star Spa for the building's contents.  (Id. at 67).

Spencer testified that she did not believe that she had an agreement with the Turano

Agency to obtain flood insurance coverage for the contents of the building.  (Id. at

72).  No one at the Agency ever told Spencer that the contents of the building were

covered by Stark Spencer's flood insurance policy.  (Id. at 75-76).  Ron Stark,

Spencer's husband and co-owner of the businesses, also testified that Star Spa had

no flood insurance coverage prior to their loss.  (Stark Dep. at 37-38).  The only

policy in place covered Stark Spencer.  (Id. at 380).

Spencer testified that sometime after July 2006 she and her husband had a conversation with an insurance adjuster. (Id. at 76).  After evaluating the coverage on the property, the adjuster asked Spencer whether the companies had coverage for the building's contents.  (Id.).  After informing the adjuster that she understood such coverage to be unavailable, Spencer and her husband spoke with agents at the Turano agency.  (Id.).  Soon thereafter, plaintiffs received a quote for contents coverage from the Defendant Agency.  (Id.).  Eventually, plaintiffs severed their business relationship with the Defendant Agency.  (Id. at 77).  At the time of Spencer's deposition, the company had coverage for flood contents through State Farm.  (Id.).

Defendant Turano testified that plaintiffs never asked him for a quote on contents insurance before the flood, but that he would have provided such information had he been asked.  (Turano Dep. at 56).  He could not recall conversations with either Spencer or Stark regarding contents coverage prior to the plaintiffs' loss due to flooding.  (Id. at 71-72).  Turano insisted that only Stark Spencer had sought flood insurance coverage, and that plaintiffs had never informed him that they kept property for which they wanted insurance in the flooded areas of the building.  (Id. at 92).  After the flood, his office on September 20, 2006 provided a flood insurance quote that included contents.  (Id. at 74, 93).  His agency provided this quote for Star Spa, not Stark Spencer.  (Id. at 75, 93).  That request was the only request Star Spa had ever made to him for a quote on contents coverage.  (Id.

13

at 93).  The Turano agency provided Star Spa with coverage for contents in

situations other than floods, but had never been requested to write flood insurance

contents coverage.  (Id. at 101).  Turano's agency kept separate records for its

dealings with Stark Spencer and Star Spa, though the agency always dealt with

either of the plaintiffs, and never with a particular company.  (Id. at 94-95).  Still,

Turano insisted that the company always clarified with the plaintiffs which company

they were speaking about.  (Id. at 95-96).  Even after the flood, Turano retained his

position that he could not write flood insurance coverage for the contents.  (Id. at 89).

        To make out a negligence claim, a plaintiff must allege "'the defendant had a

duty to conform to a certain standard of conduct; that the defendant breached that

duty; that such breach caused the injury in question; and actual loss or damage.'"

Wisniski v. Brown & Brown Ins. Co. of Pennsylvania, 906 A.2d 571, 575-76 (Pa.

Super. Ct. 2006) (quoting Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa.

2003)).  The Pennsylvania Supreme Court has held that "the legal concept of duty of

care is necessarily rooted in often amorphous public policy considerations." Althaus

v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000).  Courts are to balance several factors in

determining whether a duty exists: (1) the relationship between the parties; (2) the

social utility of the actor's conduct; (3) the nature of the risk imposed and

foreseeability of the harm incurred; (4) the consequences of imposing a duty upon

the actor; and (5) the overall public interest in the proposed solution."  Id.

         The Pennsylvania Superior Court has addressed these factors in determining

14

the extent of an insurance agent's duty to inspect a property before advising a person seeking flood insurance coverage.  See Wisniski, 906 A.2d at 581 (finding that an insurance broker does not have a "duty to inspect business premises and advise clients based on that inspection.").  The court found that "for ordinary negligence purposes, the relationship between the insurance broker and client is an arm's-length business relationship."  Id. at 579.  While the court found "social utility" in having an agent inspect a property and identify risks, the court also concluded "that insureds can also inspect their own property and come to their own reasonable conclusions about the type and scope of insurance coverage they need."  Id.  Next, the court concluded that the nature of the risk imposed and foreseeability of the harm incurred did not justify imposing a duty to inspect since, "[r]isk is the very nature of insurance . . . individuals take an intellectual gamble when purchasing insurance as they weigh the expense of purchasing insurance versus the amount of coverage they purchase.  Insurance against loss does not mean the industry is 100% guarantor of protection against loss."  Id. at 580.  Finally, the court found the duty to inspect a property would impose an onerous risk on insurance brokers, who might well be expected to inspect every item eligible for insurance or face lawsuits after a loss occurred.[1]

_____

[1]The court quoted approvingly from an opinion by the Missouri Court of Appeals that found that creating such a duty would turn the principle of insurance on its head: "[b]y creating such a duty insureds would have the opportunity to seek coverage for a loss after it occurred merely by asserting that they would have bought additional coverage if it had been offered.  This turns the entire theory of insurance on its ear as individuals, in theory,

The court thus finds that the duty owed by an insurance broker in this context is the same as the duty generally owed by an agent in any other insurance transaction.[2]  In addressing the general nature of the duty of an insurance agent to a consumer, courts in Pennsylvania have found an insurer's duty to consist of "fair dealing and good faith . . . not hand holding and substituted judgment."  Kilmore v. Erie Ins. Co., 595 A.2d 623, 627 (Pa. Super. Ct. 1991).   While an insurer may have a heightened duty to a person relying on his knowledge of a specialized industry, "the relationship [between insurer and insured] is not so unique as to compel this Court to require an insurer to explain every permutation possible from an insured's choice of coverage."  Id.   Still, this duty of good faith and fair dealing "includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies."  Dercoli v. Pennsylvania Nat'l Mut. Ins. Co., 554 A.2d 906, 909 (Pa. 1989).  This duty "arises from the nature of insurance contracts and the fiduciary relationship between an insurance company and its insureds."  Burton v. Republic Ins. Co., 845 A. 2d 889, 899 (Pa. Super. Ct. 2004); Weisblatt v. Minnesota Mut. Life Ins. Co., 4 F. Supp. 2d 371 (E.D. Pa. 1998).

_____

take an 'intellectual gamble' when purchasing insurance as they weigh the expense of insurance versus the amount of coverage that they purchase.  Allowing insureds to seek coverage, post-occurrence, allows them to completely circumvent this risk."  Wisniski, 906 A.2d at 581 (quoting Farmers Ins. Co. v. McCarthy, 871 S.W.2d 82, 86 (Mo. App. E.D. 1994)).

   [2]The court also notes that the complaint in this case is not about promises made about the flood insurance–all agree that no one ever represented that such flood insurance coverage applied to Star Spa's property–but about the failure to offer other coverage that could have protected the property stored in the real estate.

16

Pennsylvania courts have emphasized, however, that, despite the duty of the insurer to make the insured aware of the contents of a policy, "[e]ach insured has the right and obligation to question his insurer at the time the insurance contract is entered into as to the type of coverage desired and the ramifications desired therefrom." Kilmore, 595 A.2d at 627; see also, Treski v. Kemper Nat. Ins. Companies, 674 A.2d 1106, 1115-16 (Pa. Super. Ct. 1996).

Evidence here exists by which a jury could conclude that the Defendant Agency and agents breached their duty of fair dealing in selling Plaintiff Spencer insurance policies. The evidence indicates that Spencer sought coverage for the contents of the building. Star Spa owned the contents of the building, and Stark Spencer owned the building. Defendant made Spencer aware of the limits of the policies available to insure the contents under the flood insurance program, and thus that Stark Spencer and Star Spa could not obtain coverage that would insure the contents. Still, a jury could find that Spencer, aware that she could not obtain coverage under the flood insurance program, persisted in attempting to obtain coverage for the contents. A jury could also find that defendants breached their duty to disclose fully to Spencer the coverage provided by the blanket protector policy and suggest other policies which could provide the coverage she clearly and repeatedly sought. The situation here is complicated by the fact that two separate businesses sought insurance policies, but the same persons owned and managed those separate companies. The parties involved may not always have been clear

about which entity sought what kind of coverage.  The court concludes that this

complicated factual situation would be best resolved by a jury and will deny summary

judgment on this point.

### ii.  Failure to Establish Prima Facie Causation

Defendants next argue that even if plaintiffs could establish that a duty to

provide coverage existed in this case, they could not establish that the failure to

provide such coverage was the cause of plaintiffs' loss.  Because the coverage

plaintiffs here sought would not have covered the items damaged anyway, the

defendants assert that their failure to provide coverage did not cause the plaintiffs'

injuries.

Spencer testified that Star Spa kept many items in the bottom level of the

building on Roosevelt Road, including parts, surplus water treatment products and

spas.  (Spencer Dep. at 38).  Items stored in that part of the building at the time of

the flood included "new spas . . . parts, pumps, motors, water treatment products,

office furniture . . . computers, the office setup, the whole thing." (Id. at 78).  The

area also contained "a lot of used spas that we refurb[ish]." (Id. at 79).  The flood

damaged spas, pumps, heaters, water treatment product, files, office furniture, a

refrigerator, stove, wicker furniture, spa covers, artificial plants, storage chests,

stored building materials like sheetrock, literature, and dressers.  (Id. at 79-81); See

also Stark Dep. at 42).   More than $200,000 worth of this property was damaged in

the flood.  (Id. at 82; Stark Dep. at 46).

18

The court finds that the dispute here is not over whether defendants provided a flood insurance policy to cover this property, which belonged to Star Spa and was not covered by the existing flood-insurance policy, but instead whether the defendants failed to provide coverage for this property which had been requested. There is no dispute that the plaintiffs were informed that they could not obtain coverage for Star Spa's property by obtaining flood insurance coverage.  Insurance covering the contents later proved available to the plaintiffs, and they obtained it subsequent to the flood.  If the plaintiff had obtained such coverage before the incident, they would not have suffered the uncompensated damage to their property that is the subject of this lawsuit.  As such, a jury could conclude that the failure of defendants to inform plaintiffs of coverage available for Star Spa's property and was the cause of Star Spa's injuries, and the court will deny the defendant's motion on this point.

### C.  Damages on the Breach of Contract Claim

Defendants also argue that plaintiff Stark Spencer cannot recover on its breach of contract claim because Stark Spencer did not suffer any damages associated with the breach.[3]  Stark Spencer had coverage only for damage to the building here in question, not for any of the contents of the property.  Plaintiffs have evidence only of damage to property belonging to Star Spa, and therefore Plaintiff

---

[3]The court previously dismissed Plaintiff Star Spa's breach of contract claim, concluding that no contract existed between Star Spa and the defendants.

Stark Spencer has not suffered any damages for which they would be entitled to recover.

"A claim for breach of contract exists where it can be shown that there was a contract, a breach of duty imposed by that contract and damages that resulted from the breach." Koken v. Steinberg, 825 A.2d 723, 729 (Pa. Commw. Ct. 2003). "The basic elements of a contract" include "an offer, acceptance and consideration." Hatbob v. Brown, 575 A.2d 607, 613 (Pa. Super. Ct. 1990). Here, the deposition testimony indicates that the only damage suffered by the plaintiffs was to the contents of the building. As outlined above, all of the items damaged in the flood that precipitated the instant litigation belonged to Star Spa. (Spencer Dep. at 81). The flood insurance policy the plaintiffs held was issued to Stark Spencer, and Spencer was "never under any impression that [she] had a flood insurance policy for Star Spa Services." (Id. at 64). Spencer's husband and business partner, Ron Stark, agreed with this assessment that Star Spa never had any flood insurance. (Ron Stark Deposition, Exh. L to Doc. 28, (hereinafter "Stark Dep.") at 26). Because no evidence indicates that the defendants breached their agreement to provide coverage for the building, the court finds that no reasonable juror could conclude that defendants breached their insurance contract with Stark Spencer. The court will therefore grant summary judgment to the defendants on Stark Spencer's breach of contract claim.

### D.  Unfair Trade Practices and Consumer Protection Law/Reasonable

**Expectations Doctrine**

Defendants next argue that they should be granted summary judgment on plaintiffs' claims brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") because plaintiffs have no evidence of malfeasance but only nonfeasance, and the law requires that a plaintiff establish malfeasance to prove liability.  Defendants also argue that plaintiffs cannot claim that they had a reasonable expectation of insurance coverage because they knew that the policy that had purchased did not provide such coverage.

Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PENN. CONS. STAT. §§ 201-1, *et seq*, "[i]t is well established that an insurer's refusal to pay benefits to an insured is nonfeasance, and not actionable under the CPL."  Klinger v. State Farm Mutual Auto Ins. Co., 895 F. Supp. 709, 717 (M.D. Pa. 1995); see also Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 307 (3d Cir. 1995) (holding that "[i]n Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the Unfair Trade Practices and Consumer Protection Law [citation omitted], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable.").

Thus, the plaintiffs would not have a claim under the UTPCPL if they had purchased a valid policy and the defendants had refused coverage on a claim.  The evidence here, however, indicates that plaintiffs never had a policy that would cover

the contents in question.  Instead, they contend that the evidence demonstrates that

they sought such a policy but were negligently prevented from obtaining one.  The

question in this case, then, is whether the failure to procure such a policy constitutes

the sort of malfeasance a jury could use to find defendants liable.

The Third Circuit Court of Appeals has concluded that "Pennsylvania law does

not allow an insurer to use the explicit language of its insurance policy to defeat the

reasonable expectations of an insured, at least when the insured's expectations are

based on the insurer's or its agent's representations, and that it is not unreasonable

for insureds to rely on the representations of the insurer's agent rather than on the

contents of the insurance policy to understand the scope or cost of her coverage."

Dilworth v. Metro. Life Ins. Co., 418 F.3d 345, 353 (3d Cir. 2005); see also Bensalem

Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1311 (3d Cir. 1994) (noting that in

Pennsylvania "we are confident that where the insurer or its agent creates in the

insured a reasonable expectation of coverage that is not supported by the terms of

the policy that expectation will prevail over the language of the policy.").   In Dilworth,

the Third Circuit Court of Appeals reversed the district court's grant of summary

judgment to the defendant on plaintiff's claim under the UTPCPL.  The plaintiff had

purchased a life insurance policy and claimed her insurance agent had informed her

that she would not have to pay premiums after nine or ten years because the policy

was "self funding."  Dilworth, 418 F.3d at 347.  Because plaintiff had presented

evidence that demonstrated that she reasonably expected her policy to include

provisions which it did not, the court concluded that her claim under the UTPCPL could survive summary judgment.  Id. at 353-54.

The situation here is different from <u>Dilworth</u>.  The evidence indicates that plaintiffs did not believe that they had received coverage for contents in their flood insurance policy.  Instead, the evidence demonstrates that they believed–because of their agents' representations–that they could not obtain such coverage because of where the contents were stored on the property.  No evidence indicates that the plaintiffs ever expected the policy they had in place to cover the property that the flood damaged.  As such, no reasonable expectation of coverage based on the defendants' representations occurred, and plaintiffs cannot prevail on their claim under the UPTCPL.  Summary judgment will be granted the defendants on this claim.

**Conclusion**

For the reasons stated above, we will grant the defendants' motion for summary judgment in part and deny it in part.  The court will grant the motion for summary judgment on plaintiffs' breach of contract claim and plaintiffs' claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  The court will deny the motion on plaintiff's negligence claims contained in counts two and three.  A trial date will be set to address these claims for negligence in the procurement of insurance coverage for Star Spa's contents.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STAR SPA SERVICES, INC.,** | : | **No. 3:07cv302** |
| **STAR SPA INC., and** | : | |
| **STARK SPENCER REAL ESTATE** | : | **(Judge Munley)** |
| **PARTNERSHIP,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT G. TURANO INSURANCE** | : | |
| **AGENCY, INC,** | : | |
| **ROBERT G. TURANO,** | : | |
| **SHERRI ROBBINS,** | : | |
| **NATIONWIDE MUTUAL FIRE** | : | |
| **INSURANCE CO.,** | : | |
| **NATIONWIDE FLOOD INSURANCE** | : | |
| **PROGRAM,** | : | |
| **NATIONWIDE PROPERTY &** | : | |
| **CASUALTY CO., and** | : | |
| **NATIONWIDE MUTUAL INSURANCE** | : | |
| **CO.,** | : | |
| **Defendants** | : | |

**ORDER**

   **AND NOW**, to wit, this 27th day of January 2009, the Defendants' motion for

summary judgment (Doc. 23)  is hereby **GRANTED IN PART** and **DENIED IN PART**,

as follows:

   1) The motion is **GRANTED** with respect to plaintiffs' remaining breach of

contract claims and claims under the Pennsylvania Unfair Trade Practices and

24

Consumer Protection Law; and

2) The motion is **DENIED** with respect to the plaintiffs' negligence claims

raised in Counts II and III of the complaint.


                                        **BY THE COURT:**


                                        **s/ James M. Munley**
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**